UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOBBIE LEONARD,<br><br>                                    Plaintiff,<br><br>v.<br><br>KFMB-TV, LLC,<br><br>                                    Defendant. | Case No.: 20cv1612-LL-KSC<br><br>**AMENDED[1] ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF No. 45]** |

Currently before the Court is Defendant's Motion for Summary Judgment. ECF No. 45. The motion has been fully briefed and is suitable for submission without oral argument. ECF No. 60. For the below reasons, the motion is **GRANTED IN PART** and **DENIED IN PART.**

## I.    BACKGROUND

KFMB-TV, LLC ("KFMB") is a television station in San Diego. ECF No. 54. In January 2000, KFMB hired Plaintiff as a part-time writer. Plaintiff remained with KFMB until August 2001 when she resigned to pursue opportunities outside of the broadcasting field. Plaintiff rejoined KFMB in November 2011 as a part-time weekend night

---

[1] This Amended Order corrects an error in the conclusion section that does not affect the substance of the Court's previous order at ECF No. 62.

Assignment Desk Editor. In February 2018, TEGNA Inc. ("Tegna") purchased KFMB. Between 2017 and April 2019, Plaintiff was not selected for four different full-time positions. Plaintiff was in her sixties. The persons selected for the positions were all at least 15 years younger than Plaintiff. On January 22, 2020, Plaintiff accepted an offer of employment with the United States Census Bureau. Her last day with KFMB was on January 23, 2020. She informed the company, "[e]ffective Friday January 24th I quit. Key card & cell phone will be dropped off at the front desk before close of business Friday."

On July 10, 2020, Plaintiff filed a complaint against Tegna in San Diego Superior Court for: (1) "Denial of Promotion in Employment – Age Discrimination (Gov. Code § 12940(a));" (2) "Denial of Promotion in Employment – Failure To Prevent Age Discrimination (Gov. Code § 12940(k));" and (3) "Constructive Termination of Employment – Age Discrimination (Gov. Code § 12940(a))." ECF No. 1-2. On August 17, 2020, Tegna filed an answer. ECF No. 1-3. On August 19, 2020, the case was removed to federal court based on diversity of citizenship. ECF No. 1. On November 10, 2020, Plaintiff amended her complaint by replacing Tegna with KFMB as the sole Defendant. ECF No. 14. On June 30, 2021, KFMB filed the instant Motion for Summary Judgment on all of Plaintiff's claims. ECF No. 45. On January 4, 2022, the case was transferred to the below signed district judge. ECF No. 59.

## II.   LEGAL STANDARD

A moving party is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine if the evidence, viewed in the light most favorable to the non-moving party, "is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

The moving party may make this showing by identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of

material fact. *Celotex*, 477 U.S. at 323. If a moving party carries its burden of showing the absence of evidence as to an essential element of the opposing party's case, "the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010); *see also Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927-28 (9th Cir. 2009). "This burden is not a light one." *Oracle*, 627 F.3d at 387. The party opposing the motion for summary judgment "must show more than the mere existence of a scintilla of evidence" by coming forward "with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* The nonmoving party must go beyond the pleadings and designate facts showing a genuine issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citation omitted). The nonmoving party can do this by citing to specific parts of the materials in the record or by showing that the materials cited by the moving party do not compel a judgment in the moving party's favor. Fed. R. Civ. P. 56(c).

"In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence," *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007), but will draw inferences from the facts in the light most favorable to the nonmoving party, *see Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the nonmoving party's mere allegation that factual disputes exist between the parties will not defeat an otherwise properly supported motion seeking summary judgment. *See* Fed. R. Civ. P. 56(c); *see also Soremekun*, 509 F.3d at 984 ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment"); *see also Nelson v. Pima Cmty.*, 83 F.3d 1075, 1081-82 (9th Cir.1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment"). Further, if the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. *Matsushita*, 475 U.S. at 587.

### III.    DISCUSSION

#### A.    Age Discrimination

Under the California Fair Employment and Housing Act ("the FEHA"), it is an unlawful employment practice, unless based upon a "bona fide occupational qualification," for an employer, because of the age of any person, to discriminate against the person in terms, conditions, or privileges of employment. Cal. Gov't Code § 12940(a). "Generally, the plaintiff must provide evidence that (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 355 (2000). A prima facie case for unlawful age discrimination can be established with direct evidence or by presumption. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994). Plaintiff argues she has established her prima facie case of discrimination by both direct evidence and by presumption.

#### 1.    Direct Evidence

Plaintiff argues she has produced direct evidence of discriminatory motive.[2] ECF No. 49 at 21. "Direct evidence is evidence which, if believed, proves the fact of animus without inference or presumption." *DeJung v. Superior Ct.*, 87 Cal. Rptr. 3d 99, 111 (2008); *see also Coghlan v. Am. Seafoods Co. LLC.*, 413 F.3d 1090, 1095 n.8 (9th Cir. 2005) ("'Direct' evidence refers only to evidence (such as racist or sexist statements) that proves the fact of discriminatory animus without the need for substantial inference.").

---

[2] KFMB does not dispute that Plaintiff was over 40 and suffered an adverse employment action when she was not selected for the full-time positions. While KFMB states that Plaintiff's performance ratings "declined as time progressed," that "more qualified" candidates were selected, and that Plaintiff's "job and interview performance simply fell short," KFMB does not specifically argue that Plaintiff was not qualified for the positions she sought or was not performing competently in the position she held.

Plaintiff points to a December 2018 email chain that included the KFMB President and General Manager Alberto Meir y Teran, and Tegna Senior Vice President of Media Operations, Mark Cornetta. ECF No. 49-4 at 49-51. The chain begins with an email to Cornetta, on which Teran is copied, informing them that an employee who worked for KFMB for over thirty-two years was retiring, and after speaking with Teran and another manager,[3] the "plan" was to promote another employee, Mario Escovedo, who worked for the company for over thirty years, into the position. *Id.* at 50. Teran responded to Cornetta, "[w]e will be saving approximately $40k on an annual basis. We are using this as part of our $125k that we need to cut per corporate request." *Id.* Cornetta responded:

> The next in line is not necessarily the right thing to do here. . . . You have a major culture issue in your newsroom and a workflow challenge. Promoting existing folks who may or may not buy-in is not a good strategy. It would be better to begin to infuse some innovative thinking into your news organization otherwise we will be condemned to the past. Change is hard but it is a heck of a lot harder when you have resistance. Everyone that has come to visit has remarked on the culture in the new organization and how things are being done in a very basic and rudimentary way. We need bold thinking and leadership. I am not aware of Mario's skills but I do know that if he has been in your organization for 31 years there is a very strong likelihood that he doesn't represent forward thinking. Please don't move forward with this promotion. It sounds like it is an easy move but I doubt if it is the right one.

*Id.* at 49. After being informed that "Mario is probably assuming that he would move into a supervisor role," Cornetta replied, "I am concerned for the reasons I stated below. We may need to try and use some of the openings to bring in some fresh thinking and this is one of those opportunities we need to look at." *Id.* Plaintiff also points to Teran's deposition testimony in which he agreed there was a "major culture issue" in the newsroom. ECF No. 49-4 at 218. Teran stated:

---

[3] The other manager was Dean Elwood, Vice President and Director of News. *See* ECF No. 45-1 at 10.

> It was an opinion that I came up with on my own. . . . We were a very – we had not progressed – our newsroom had not progressed with the times in regards to – if you want to use the word "pivot," which a lot of people use the word "pivot." We had not pivoted into the digital media world, okay?

*Id.* Plaintiff argues these statements are direct evidence of discriminatory intent on the part of "upper management" of KFMB because "Teran and Cornetto directed that older employees not be promoted." ECF No. 49 at 5.

Certainly, Cornetta's comments are evidence of his interest in hiring outside applicants who could infuse some "innovative," "bold," and "fresh" thinking into the newsroom instead of promoting "existing" long-time employees, like Escovedo, who were "next in line" for the position. Teran's comments show his interest in fixing the "culture issue" in the newsroom because the newsroom had not "progressed with the times" and had not "pivoted into the digital world." However, the comments do not, if believed, prove animus towards people over 40 without the need for inference or presumption. Rather, on their face, the comments indicate interest in hiring from the outside for one particular position.[4] While it may be reasonable to infer that references to "fresh thinking" and "pivot[ing] into the digital world" reveals a preference for younger people, it is an inference nonetheless. Courts have found that similar comments, or worse comments, do not rise to the level of direct evidence. *See See Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 915, 91819 (9th Cir. 1996) (supervisor's comment that he wanted to get rid of all the "old timers" was ambiguous because it could refer to longtime employees, not just those over 40, and was not tied directly to plaintiff's layoff, so "it is weak evidence and not enough to create and inference of age discrimination"); *Nesbit v. Pepsico, Inc.*, 994 F.2d 703, 705

---

[4] While Plaintiff claims these comments constitute a "directive" not to promote older employees, Plaintiff does not provide any evidence that Teran or Cornetto were involved in any of the decisions not to select Plaintiff for the full-time positions, or that their comments were linked with the decision-making process. *See DeJung*, 87 Cal. Rptr. at 111 ("Comments demonstrating animus may be found to be direct evidence if there is evidence of a causal relationship between the comments and the adverse job action at issue.").

(9th Cir. 1993) (supervisor's comment during a meeting that "we don't necessarily like grey hair" that was not tied directly to the employee's termination was "at best weak circumstantial evidence of discriminatory animus toward" the employee); *Mewborn v. Abbott Laboratories*, CV 18-8732 DSF (PLAx), 2021 WL 4622396, at *10 (C.D. Cal. June 8, 2021) (comments like "not adaptable" and "not willing to change" are not direct evidence of age discrimination because they do not refer to age or show discriminatory animus without inference or presumption); *Wexler v. Jensen Pharms., Inc.*, No. CV 15-03518-AB (AJWx), 2016 WL 6594106, at *9 (C.D. Cal. July 25, 2016), *aff'd*, 739 F. App'x 911 (9th Cir. 2018) (finding that it would be a "stretch" to say the comment "older reps were the hardest reps to train, were most challenging" reflects discriminatory animus); *Robinson v. PPG Indus., Inc.*, No: 2:19-cv-04033-ODW (RAOx), 2021 WL 5868323, at *7 (C.D. Cal. Dec. 9, 2021) (commenting that the plaintiff was "too senior" required an inference the speaker meant "too old").

Plaintiff also argues that direct evidence of discriminatory motive exists because the KFMB HR Director "ordered a false record of 'unreliability due to calling in sick too much' be placed in [Plaintiff's] personnel file, which was used by management to justify denying the promotions." ECF No. 49 at 5. The only support for this argument, however, is a June 3, 2019 letter to Plaintiff warning her about five unexcused absences between January and May of 2019. ECF No. 49-4 at 96. Plaintiff offers no evidence to support her claim the record is false, that the HR Director ordered it to be placed in Plaintiff's file, or that the letter was used by management to deny her promotions.[5] Accordingly, Plaintiff has not shown direct evidence of age discrimination.

///

///

---

[5] There is also no evidence to suggest, as Plaintiff argues, that the letter, or any manager, repeated the "trope that 'older employees are unreliable because they get sick too much.'" *See* ECF No. 49 at 5.

### 2.  Presumption

Under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Guz*, 24 Cal. 4th at 354-55. If the plaintiff does so, the burden shifts to the employer to rebut this presumption of discrimination by producing evidence sufficient to create a genuine issue of fact and that would, if true, show the employment action was taken for a "legitimate, nondiscriminatory reason." *Id.* at 355. If the employer does so, the burden then shifts back to the plaintiff to show that these reasons are mere "pretexts for discrimination, or to offer any other evidence of discriminatory motive." *Id*. To satisfy this burden and survive summary judgment, the plaintiff must produce enough evidence "to allow a jury to conclude that age was a 'substantial motivating factor' in [her] termination." *Merrick v. Hilton Worldwide, Inc.*, 867 F.3d 1139, 1147 (9th Cir. 2017) (quoting *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 232 (2013)).

### a.  Prima Facie Case

Making a prima facie case of discrimination "is not onerous." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). KFMB argues that Plaintiff fails to make her prima facie showing of discriminatory motive because "[n]o evidence exists to show KFMB rejected [Plaintiff's] applications for the four positions because of her age." ECF No. 45-1 at 21. In response, Plaintiff appears to argue[6] that she has satisfied her prima facie burden of showing discriminatory motive because all of the persons hired were "substantially younger" and because she had "vastly superior qualifications to two of the persons who were selected instead of her." ECF No. 49 at 4.

_____

[6] Plaintiff's opposition generally does not conform to the *McDonnell Douglas* framework. For example, rather than beginning her argument by addressing her prima facie case, Plaintiff addresses it at the end of her brief, repeats her direct evidence argument, and essentially just refers back to the section of her memorandum providing factual background information. Plaintiff also provides little to no meaningful discussion of the cases that are improperly cited throughout the memorandum.

In termination cases under the FEHA, "evidence that an employee is replaced by a substantially younger person, together with certain other facts . . . , permits the inference that the termination was based upon age, which may be rebutted by evidence of non-age related reasons for the termination." *Begnal v. Canfield & Assocs., Inc.*, 78 Cal. App. 4th 66, 74 (2000). In "failure-to-promote" cases under the federal Age Discrimination in Employment Act (ADEA), "a plaintiff may establish a prima facie case of discrimination in violation of the ADEA by producing evidence that he or she was (1) at least forty years old, (2) qualified for the position for which an application was submitted, (3) denied the position, and (4) the promotion was given to a substantially younger person." *Shelley v. Geren*, 666 F.3d 599, 608 (9th Cir. 2012).[7] "[A]n average age difference of ten years or more between the plaintiff and the replacements will be presumptively substantial[.]" *France v. Johnson*, 795 F.3d 1170, 1174 (9th Cir. 2015), *as amended on reh'g* (Oct. 14, 2015).

There is no dispute that each person selected over Plaintiff for a full-time position was substantially younger. While Plaintiff was in her sixties, the persons selected for the positions were 28, 28, 32, and 43. Neither party addresses whether this fact, standing alone, is sufficient as a matter of law for Plaintiff to show a prima facie case of discriminatory motive.[8] *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996)

---

[7] "In evaluating discrimination claims under FEHA, California courts look to federal precedent governing analogous federal discrimination claims." *Day v. Sears Holdings Corp.*, 930 F. Supp. 2d 1146, 1160 (C.D. Cal. 2013); *see also Metoyer v. Chassman*, 504 F.3d 919, 941 (9th Cir. 2007) ("California courts apply the Title VII framework to claims brought under FEHA.") (citing *Guz*, 24 Cal. 4th at 354).

[8] Plaintiff states "where employees who were substantially younger than the plaintiff were selected for a position and/or where there is a stark disparity between the candidate's qualifications for the position and the older candidate in the protected class with vastly superior qualifications is not selected, this is circumstantial evidence of an employer's discriminatory motives." ECF No. 49 at 4. However, the cases cited by Plaintiff do not support this statement of the law. In *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323

("Because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class."). Regardless, it is undisputed that Plaintiff was rejected not once, but four times in two years, in favor of substantially younger persons. It is also undisputed that Plaintiff had been working for years as a part-time Assignment Editor, and on three separate occasions, was not selected for a full-time Assignment Editor position.[9] Accordingly, Plaintiff is entitled to a prima facie presumption that she was qualified for those positions. Based on the above, Plaintiff has met her minimal prima facie burden of showing circumstance suggesting discriminatory motive.

### b.    Legitimate, Non-Discriminatory Reasons

Because Plaintiff has made a prima facie case of age discrimination, the burden shifts to KFMB to produce admissible evidence sufficient to "raise a genuine issue of fact and to justify a judgment for the employer, that its action was taken for a legitimate, nondiscriminatory reason." *Guz*, 24 Cal. 4th at 355-56 (internal quotation marks and alterations omitted). "Legitimate" means "reasons that are facially unrelated to prohibited bias, and which, if true, would thus preclude a finding of discrimination." *Id.* at 358 (internal emphasis omitted). "To be non-discriminatory, the reasons need not have been

---

F.3d 1185, 1193 (9th Cir. 2003), the court merely reaffirmed that "clearly superior" qualifications "standing alone" are enough to prove pretext. In *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1116-17 (9th Cir. 2011), the court reversed the district court's finding that the replacement of a 59-year-old terminated employee with a 42-year-old employee "refutes rather than supports" a claim for age discrimination. In *Reeves v. MV Transp., Inc.*, 186 Cal. App. 4th 666, 675 (2010), the court merely reaffirmed that a disparity in qualifications must be "substantial to support an inference of discrimination sufficient to show pretext."

[9] While Plaintiff repeatedly offers opinions and speculation concerning her qualifications and job performance, this conjecture is not, as KFMB argues, the only evidence upon which Plaintiff relies.

wise or even correct." *McKinney v. Am. Airlines, Inc.*, 641 F. Supp. 2d 962, 972 (C.D. Cal. 2009) (citing *Guz*, 24 Cal. 4th at 358). Articulating a legitimate, nondiscriminatory reason is not the same as proving the absence of discriminatory motive. *Bd. of Tr. of Keene St. Coll. v. Sweeney*, 439 U.S. 24, 25 (1978). The burden "is merely one of production, not persuasion." *Bowen v. M. Caratan, Inc.*, 142 F. Supp. 3d 1007, 1025 (E.D. Cal. 2015) (citing *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010)).

KFMB argues that Plaintiff was not selected for the positions because the persons selected were "more qualified" and "[i]n the opinion of the hiring managers, [Plaintiff's] job and interview performance simply fell short." ECF No. 45-1 at 7. In support of this argument, and as discussed in detail below, KFMP provides deposition testimony from persons involved in the hiring decision that the younger people selected for the positions were better candidates. This is a legitimate, non-discriminatory reason for not selecting Plaintiff. *See Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996) (plaintiff's qualifications for a promotion, and the qualifications of the person selected, are legitimate, non-discriminatory reasons).

### c.   Pretext

Having produced evidence of a legitimate, non-discriminatory reason for not selecting Plaintiff for the positions, the burden shifts back to Plaintiff to "attack the employer's proffered reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive." *Guz*, 24 Cal. 4th at 356. Pretext can be demonstrated in two ways: "(1) directly, by showing that unlawful discrimination more likely than not motivated the employer;[10] or (2) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable." *Earl*, 658 F.3d at 1112-13 (citation omitted). "Where evidence of pretext is circumstantial, rather than direct, the plaintiff must produce 'specific' and 'substantial'

---

[10] As discussed above, Plaintiff fails to produce any direct evidence showing that unlawful discrimination more likely than not motivated KFMB.

facts to create a triable issue of pretext." *Id.* at 1113. *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 232 (2013) (plaintiff's burden is to show that discrimination was a "substantial motivating factor").

A claim can survive summary judgment if the totality of the evidence permits a rational inference that the employer's actual motive was discriminatory. *Guz*, 24 Cal. 4th at 361-62. "An employee in this situation cannot simply show the employer's decision was wrong, mistaken, or unwise." *Morgan v. Regents of the Univ. of Cal.*, 88 Cal. App. 4th 52 (2000) (internal quotation marks omitted). "Rather, the employee must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence . . . . and hence infer that the employer did not act for the . . . . non-discriminatory reasons." *Id.* (internal quotation marks, emphasis, and citation omitted); *Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 746 (9th Cir. 2011). "In judging whether [an employer's] proffered justifications were 'false,' it is not important whether they were objectively false . . . . Rather, courts only require that an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002) (citation and internal quotation marks omitted). However, the burden on plaintiffs to raise a triable issue of fact as to pretext is "hardly an onerous one." *Payne v. Norwest Corp.*, 113 F.3d 1079, 1080 (9th Cir. 1997); *see also Nicholson v. Hyannis Air Serv., Inc.*, 580 F.3d 1116, 1127 (9th Cir. 2009) ("[V]ery little evidence is necessary to raise a genuine issue of fact regarding an employer's motive; and any indication of discriminatory motive may suffice to raise a question that can only be resolved by a fact-finder.") (internal quotation marks omitted).

### i.       2017 Assignment Editor Position

The parties do not dispute that Plaintiff, who was 61-years old at the time, was passed over in 2017 for a full-time Assignment Editor position in favor of 43-year-old Bernadette Abshier who, like Plaintiff, was also working as a part-time Assignment Editor. ECF No.

45-1 at 12. In support of its decision, KFMB relies on deposition testimony from Dean Elwood, Vice President and News Director, who testified that he had "final approval" on who got the job. ECF No. 45-4 at 19:17-23. Elwood testified that Abshier was: (1) "a far superior candidate," *id.* at 20:14-15; (2) "more competent at the mechanics of the job of being an assignment editor;" *id.* at 20:18-20; (3) "far more reliable," *id.*; (4) "excellent at everything she did," *id.* at 25:12; and (5) "a star performer," *id.* 25:8-9.

With respect to Plaintiff, Elwood testified that: (1) she "had reliability issues," but didn't recall having discussions with her about being unreliable, *id.* at 20:20, 21:6; (2) he had discussions with her about a "pretty severe" ethical issue where she reportedly threatened to do a "hit piece" against her mortgage company, *id.* at 21:9-25; (3) she showed a lack of "drive and initiative . . . . by not being available to fill in for other people when she's a part-timer telling people constantly that she needed money," *id.* at 23:21-23, 24:11-13; and (4) she was not a "star performer," *id.* at 25:8-9.[11]

///

///

///

---

[11] In its motion, KFMB also claims (1) "while Elwood was ultimately responsible for making a final decision, Cooper-Chadwick was also involved in reviewing applications and making recommendations for the position," and (2) "both Cooper-Chadwick and Elwood concluded that [the person selected] was the superior candidate as compared to Plaintiff." ECF No. 45-1 at 13; *see also* ECF No. 52 at 5 ("Dean Elwood and John Chadwick-Cooper selected Bernadette Abshier[.]"). While Ellwood testified that "it would have been a recommendation from [Cooper-Chadwick], and then we would have discussed it," ECF No. 45-4 at 19:12-13, the deposition excerpts attached to KFMB's motion in no way show that Cooper-Chadwick was involved in the decision. He is not asked whether he actually participated in the hiring decision, or why Plaintiff was not hired. Rather, the questions are generally limited to those concerning Plaintiff's performance evaluations and his previous supervision of the person selected for the position, as well as his knowledge of Plaintiff. More importantly, Ellwood also testified that he had no "specific recollection" that Cooper-Chadwick made any recommendation concerning the hiring decision. *Id.* at 19:14-16.

Plaintiff does not argue that Elwood's positive opinions about Abshier's performance were a pretext for discrimination.[12] Plaintiff provides no evidence that Abshier was not "excellent at everything she did," "more competent at the mechanics of the job," or "a star performer." Plaintiff also does not specifically argue that she was more qualified than Abshier. While Plaintiff claims she had "vastly superior qualifications to two of the persons who were selected," Abshier was not one of those persons. ECF No. 49 at 8. Indeed, Plaintiff concedes that Abshier's qualifications "have not been provided." *Id.* at 8. Instead, Plaintiff essentially makes three arguments.

First, Plaintiff cites her own testimony that she "believed" she was not selected based on her age because she had "extensive experience, not just on a local level, but on the network level, and had been doing the job exactly as they had wanted for the past six and a half years." ECF No. 49-4 at 194:11-18. However, as repeatedly pointed out by KFMB, Plaintiff's subjective beliefs, and her testimony to the same, do not constitute specific and substantial evidence of pretext. *See Nelson v. Pima Cmty. C.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.").

Second, Plaintiff argues that "Elwood discounted [Plaintiff's] qualifications falsely claiming she was 'unreliable.'"[13] ECF No. 49 at 11. This is essentially two arguments. With

---

[12] In fact, nowhere in Plaintiff's opposition is the word "pretext" even mentioned. Plaintiff also does not argue that the fact that she was rejected on four different occasions in favor of a substantially younger person is, by itself, sufficient evidence of pretext.

[13] Plaintiff does not specifically attack Elwood's rationale that he had discussions with her about a "pretty severe ethical issue" where she reportedly threatened to do a "hit piece" on her mortgage company. Plaintiff argues "[t]he alleged statement to Elwood by an unidentified person at some unidentified mortgage company is hearsay and inadmissible for purposes of this motion." ECF No. 49 at 11. The objection is **OVERRULED** because the evidence is not being offered for the truth of the matter asserted, but for its effect on Elwood. Plaintiff's other objection, i.e. "descriptions of what a video allegedly depicts is hearsay," is **OVERRULED** for the same reason.

respect to her claim that Elwood "discounted" her qualifications, Plaintiff argues that "all" of her "highly positive performance evaluations were ignored by KFMB's management when deciding whether to select [her] for the four full-time positions."[14] *Id.* at 11. In support, Plaintiff points to Elwood's deposition testimony that he did not recall looking at Plaintiff's performance evaluations as part of the hiring process, and that the evaluations played no role in his hiring decision because Abshier "was a better candidate." ECF No. 49-4 at 144:4-12.

KFMB does not dispute that Plaintiff's performance evaluations from 2012 through 2018 were "overall positive," ECF No. 45-1 at 11, or that Elwood did not review them before deciding not to select Plaintiff. Moreover, Plaintiff is entitled to the rational inference that multiple past positive reviews of her performance in the part-time Assignment Editor position support her qualifications to perform a full-time Assignment Editor position. Accordingly, while Plaintiff has not produced evidence that Elwood discounted Plaintiff's "qualifications" all together, she has produced evidence that Elwood did not consult documents that would have likely supported Plaintiff's qualifications for the position. Again, however, without some evidence regarding Abshier's qualifications (or lack thereof), the fact that Plaintiff was qualified for the position is not evidence that she was *more* qualified than Abshier or that Elwood's reasons are pretextual. It merely supports her prima facie case that she was qualified for the position. *See Chisolm v. 7-Eleven, Inc.*, 383 F. Supp. 3d 1032, 1063 (S.D. Cal. 2019), *aff'd*, 814 F. App'x 194 (9th Cir. 2020) (faulting the plaintiff for admitting she did not know other candidates' qualifications, and for failing to submit evidence of their qualifications to support her allegation that she had more experience). It is also not reasonable to infer that evidence regarding Abshier's qualifications, if produced, would show that Abshier was less qualified

---

[14] Plaintiff also claims that "KFMB's motion ignores its own documents prepared by [Plaintiff's] supervisors (the multiple evaluations from 2012 through 2018 showing they all thought she was an excellent Assignment Editor)." ECF No. 49 at 11.

than Plaintiff. Accordingly, Plaintiff's claim that that Elwood "discounted" her qualifications does not show pretext.

With respect to Plaintiff's allegation that Elwood "falsely claim[ed] she was 'unreliable,'" Plaintiff argues KFMB's HR Director "ordered a false record of 'unreliability due to calling in sick too much' be placed in [Plaintiff's] personnel file, which was used by management to justify denying the promotions." ECF No. 49 at 5. During his deposition, Elwood cited "reliability issues" as one of the reasons Plaintiff was not selected for the position, but he did not elaborate, and Plaintiff's counsel apparently did not inquire as to what reliability issues Elwood was referring to. Accordingly, Plaintiff has not shown that Elwood's rationale regarding Plaintiff's "reliability issues" was pretextual based on an allegedly "false record."

Third, Plaintiff argues she should have been selected because (1) Plaintiff was a "current" employee while Abshier was a "fill-in" employee, and (2) Plaintiff was "entitled to preference as a regular employee according to their supervisor, Elwood." ECF No. 49 at 15. Without some evidence as to what "fill-in" employees actually did, Abshier's status as a "fill-in" employee does not, by itself, suggest that Abshier was not "a far superior candidate," "more competent at the mechanics of the job of being an assignment editor," "far more reliable," "excellent at everything she did," or "a star performer." Indeed, Plaintiff admits that Abshier's evaluation on a purely "fill-in" basis was "slightly better." *Id.* Additionally, Elwood testified that promoting internally was something "we tried to do, if we could" and that it was "preferable to promote from within." ECF No. 49-4 at 141:4-6. Elwood did not testify that Plaintiff was "entitled to preference" because she was a "regular" employee, or that selecting Abshier was not considered a promotion "from within." Accordingly, Plaintiff has not met her burden of showing that KFMB's proffered reasons for not selecting her for the 2017 Assignment Editor position are pretexts for discrimination, or that the totality of evidence permits a rational inference and triable issue that KFMB's actual motive was discriminatory with respect to the position. *See Guz*, 24 Cal. 4th at 361-62.

### ii.     2018 Digital Content Producer

The parties do not dispute that Plaintiff, who was 62-years-old at the time, was passed over in 2018 for a Digital Content Producer position in favor of 28-year-old Jarrett Wright. ECF No. 45-1 at 14. In support of its decision, KFMB relies on deposition testimony from Mitch Gruber, who testified that he "spoke with her and told her about the position," but it was an "informational meeting" and "did not include a typical interview period." ECF No. 45-5 at 6:8-14, 7:14-16. Gruber testified that Wright was selected for the position because: (1) "[h]e would have been the best candidate for the job, meeting the criteria we were looking for," *id.* at 8:21-22; (2) "he had the writing skillset, the video editing skillset, the image;" (3) "[h]e had worked with a content management system, which was something we were looking for;" and (4) "he had a strong desire to be part of a digital content team," *id.* at 9:3-7.[15]

With respect to Plaintiff, Gruber testified, "I don't recall the specifics that I knew of her qualifications." *Id.* at 9:11-12. He also said he did not recall the "specific words that were said." *Id.* at 10:6:7. Gruber nonetheless testified:

> What I can recall from meeting with her and going over the job – or the skillsets and the job – duties we were looking for, I don't remember seeing a match, and I don't remember seeing a true interest in being part of the – a digital news team. . . . What I recall from that meeting was her desire to be a full-time employee at KFMB, not a desire to be on this specific team or type – or area of digital news content. . . . [M]y take-away was that her interest was about the full-time position – this is my personal take-away from talking with her – versus the actual job functions that we were hiring for. That is what I can best recall.

*Id.* at 9:11-10:13.

---

[15] KFMB also cites to a declaration by Gruber in which Gruber purportedly noted that Wright "had been performing all of the technical functions" of the Digital Content Editor position for the weather department and that Wright "had a reputation for being a team player and for being easy to work with." ECF No. 45-1 at 15.

In her opposition, Plaintiff points to a page of the employee handbook stating that "[p]osted positions are open to all qualified employees," ECF No. 49-4 at 125, and an "EEO Compliance Report" listing Plaintiff as one of the applicants, *id.* at 42. Plaintiff argues that "Gruber thought [Plaintiff] had never applied" and "[t]he evidence showing [Plaintiff] did apply for the position, but was not interviewed or considered for the job by the hiring manager, Gruber, permits the inference KFMB violated its policy [that] posted positions are open to all qualified employees." ECF No. 49 at 16.

"A plaintiff may . . . . raise a triable issue of pretext through evidence that an employer's deviation from established policy or practice worked to her disadvantage." *Earl*, 658 F.3d at 1117. "But such a deviation must be considered in context and may not always be sufficient to infer a discriminatory motive." *Merrick v. Hilton Worldwide, Inc.*, 867 F.3d 1139, 1149 (9th Cir. 2017) (citing *Guz*, 24 Cal. 4th at 365). Plaintiff has shown sufficient evidence, at least to infer, that company policy her entitled to a formal interview for the Digital Content Producer position, and not just an "informational interview." However, this fact does not allow for the inference that KFMB's alleged failure to comply with the policy worked to her disadvantage. Plaintiff does not argue, for example, that had she been formally interviewed, Gruber would have had a different opinion of her, which would have led him to select her over Wright. Accordingly, this alleged policy deviation does not show that Gruber's reasons for not hiring Plaintiff were pretextual.

Plaintiff also argues she had "vastly superior qualifications for the position than Wright" and "Wright had virtually none of the listed qualifications and [Plaintiff] had them all." ECF No. 49 at 16, 17. With respect to her qualifications, Plaintiff argues, and KFMB does not dispute, that the "main" qualification of the position was "the ability to react and disseminate breaking news quickly." *Id.* at 16 (citing ECF No. 45-13 at 2). Plaintiff also points out, and KFMB does not genuinely dispute,[16] that on her performance evaluations

---

[16] KFMB argues that Plaintiff's statement that "KFMB thought and knew [Plaintiff] was highly competent and experienced in . . . . breaking news" is a self-serving "interpretation."

Plaintiff was always rated as "outstanding" and "exceeds job requirements" in the category of "breaking news." *See* ECF No. 49-4 at 9, 13, 16, 19, 22, 25, 28, 81.

With respect to Wright's qualifications, Plaintiff argues (1) "Wright had virtually zero qualifications in breaking news; he had been a weekend news editor and was a weather producer," and (2) "[h]is 'breaking news' experience was limited to traffic accidents." ECF No. 49 at 16. In support of this claim, Plaintiff cites Wright's deposition testimony in which he described his job duties as a weekend news editor prior to 2013, and as a full-time weather producer from 2013 to 2018. ECF No. 45-7. However, Wright did not say he had "virtually zero qualifications in breaking news." To the contrary, he testified his work *did* involve breaking news. *Id.* at 6:12-16. Wright testified:

> So I dealt with traffic which, in the morning, as you know, is very pivotal, so if there were any accidents, that is considered breaking news so I would be in charge of sending the chopper to the area and relaying what the chopper says to people in the studio. I was the middle man for that.

*Id.* at 6:19-24.

Based on the above, Plaintiff has shown, at most, that a genuine dispute over whether her breaking news qualifications were superior or "vastly" superior to Wright's given that Wright's breaking news experience was apparently limited to traffic accidents. However, it appears this dispute is not material to the issue of pretext because Plaintiff does not argue that she is more qualified in any of the other areas listed in the job description, such as "maintaining and updating our station's digital platforms and mobile presence, editing television scripts and wire copy for digital  publication, editing video and images and managing live streaming video." *See* ECF No. 45-13 at 2. Moreover, Wright's breaking news qualifications were not cited as a reason for selecting Wright over Plaintiff, and Plaintiff does not address any of the specific reasons Gruber gave for selecting Wright,

---

ECF No. 52 at 9. However, the performance evaluations clearly show, without the need for interpretation, that she was always rated as "outstanding" or "exceeds job requirements" in the category of "breaking news." *See* ECF No. 49-4 at 9, 13, 16, 19, 22, 25, 28, 81.

such as his writing, video, and image "skillset," his experience working with a "content management system," or his "strong desire to be part of a digital content team." Accordingly, Plaintiff has not shown that any of the particular reasons given by Gruber are unworthy of credence because they were internally inconsistent or otherwise not believable.

### iii.    2019 Evening Assignment Editor Position

The parties do not dispute that Plaintiff, who was 62-years-old at the time, was passed over in May 2019 for an evening Assignment Editor position in favor of 32-year-old Stacy Garcia. ECF No. 45-1 at 16. In support of its decision, KFMB relies on the deposition testimony of (1) Barbara Richards, Managing Editor; (2) Timothy O'Brien, Senior Executive Producer; and (3) Mario Escovedo, Assignment Desk Manager. KFMB states that all three individuals were "involved in the hiring decision . . . , although the decision was ultimately up to O'Brien. *Id.*

With respect to Plaintiff's interview, Richards testified that he had a "negative impression" of Plaintiff's interview, and she did a "really bad job," because (1) "[s]he said her motivation for getting the job was to work full-time and make more money," and (2) "[s]he wasn't prepared for the interview [and] hadn't thought about qualities she would bring to the position or ideas of what she would do with that position." ECF No. 45-6 at 14-15. O'Brien similarly testified that Plaintiff interviewed "poorly" because "she gave me absolutely no reason to hire her" and "[t]he only reason she gave me for why she's interviewing for the position was that she needed a full-time job." *Id.* at 5-6.

With respect to Garcia's interview, Escovedo states in a declaration: (1) "Garcia was very professional and poised in her interview, and performed very well;" (2) "despite facing three relatively senior managers (O'Brien, Richards, and myself), Garcia was calm and collected throughout the interview;" (3) "[s]he spoke articulately and with passion about her experience and interest in the role;" (4) "[h]er interview also showed how well she handled herself under pressure;" (5) he was "also impressed by Garcia's experience with digital news; and (6) her "qualities and experience, as enumerated above, made her a

stand-out candidate among the approximately sixty (60) candidates that applied for the evening Assignment Desk Editor position."[17] ECF No. 45-17 at 3 ¶¶ 7-9, 11.

With respect to Garcia's performance and qualifications, Escovedo testified in his deposition that he told O'Brien that:

> [S]he was doing this job over at our competition station. She had a great reputation for handling breaking news, managing the crews. She was managing two stations over there, the Mexican-speaking reporters, the Spanish-speaking reporters and the KNSD crews. She was bilingual. It would have been a good get, to pull a star player like her off the other team. And she was very well qualified and had a great, you know, reputation as – as being a good assignment editor.

ECF No. 45-4 at 34-35. Richards testified that Garcia was "working the exact same job at one of our biggest competitors . . . . She was part of that job, handled more crews at night than we had. She had experience and, yeah, she was more qualified." ECF No. 45-6 at 16-17. Richards also testified that "[t]he full-time night position is much more responsibility . . . . than the nighttime weekend assignment position. There's more crews [and] you're in charge of more newscasts." *Id.* at 20:10-14.

In her opposition, Plaintiff makes some arguments that are similar to those she made with respect to the other positions. First, Plaintiff argues that the 2019 evening Assignment Editor Position, as well as the morning Assignment Editor Position discussed below, "were the same jobs on different shifts that [Plaintiff] had been performing part-time, but had routinely worked the full-time shifts since 2012 and as recently as early 2019." ECF No. 49 at 17. In support, Plaintiff cites emails showing that in January 2019 Plaintiff agreed to work some full-time weekday day shifts in addition to her part-time Friday through Sunday schedule. ECF No. 49-4 at 56-57 ("We have spoken to Jane and Bobbi and they are set to back-fill for the short term."). Plaintiff also cites a 2018 performance evaluation in which her supervisor, Cooper-Chadwick, reportedly stated that if a full-time assignment editor

---

[17] KFMB also provides a declaration by Escovedo that Garcia was nominated for an Emmy Award at the time of her interview. ECF No. 45-17 at 2 ¶ 10.

position opened up, Plaintiff "could easily handle it." ECF No. 45-9 at 5. Again, however, whether Plaintiff could "easily handle" the full-time position does not go to whether Plaintiff was *more* qualified than Garcia so that it can be rationally inferred that the specific reasons proffered by KFMB for not selecting Plaintiff were pretextual.

Second, Plaintiff argues she "should have been promoted without the job being posted." ECF No. 49 at 17. Plaintiff then cites the December 2018 Cornetta email chain discussing the potential promotion of Escovedo in which an HR employee stated, "I do not feel that we should post this promotion." ECF No. 49-4 at 47. Plaintiff argues that "[u]nder KFMB's preference policy to promote regular employees, a trier of fact could conclude that [Plaintiff], who had been backing up the full-time Assignment Editors since 2012, should have been given the position without posting the job[.]" ECF No. 49 at 18. Again, however, this argument does not go to whether Plaintiff was more qualified than Garcia. It goes to whether KFMB had a policy of automatically selecting internal "back-up" employees for promotions. Based on what Plaintiff has provided, however, it is not reasonable to infer that KFMB had such a policy, or that if it did, that it violated the policy. Plaintiff does not, for example, argue that employees performing a position part-time are the same as "back-up" employees, or that she was the only employee performing that position part-time. Additionally, the fact that KFMB may not have wanted to post, and in fact did not post, one particular position into which a "back-up" employee was promoted, does not establish the reasonableness of an inference that Plaintiff should have been selected for this particular full-time position, and therefore, KFMB's reasons for not selecting Plaintiff are pretextual. Plaintiff does not, for example, argue that she was as qualified for the 2019 evening Assignment Editor position as Escovedo was for the position into which he was promoted, that the positions were comparable, or that the circumstances of the positions becoming available are comparable.

Plaintiff also argues there is contrary evidence to the claims by O'Brien, Escovedo and Richards that "Garcia was a superior candidate to [Plaintiff] because of her interview, experience and being bilingual." ECF No. 49 at 18. In support of this argument, Plaintiff

points to several pieces of evidence. First, Plaintiff points to her own testimony that Richards said "she knew me so well because she had worked with me for so many years, she knew what I was capable of. She said she didn't have any other candidate that excited her as much at that time" and "they had not received any resume that jumped out at them." ECF No. 49-4 at 199:7-10. Second, Plaintiff points to her testimony that O'Brien told her she did not get the job because the candidate they chose was "more digitally oriented." *Id.* at 201:12-14. Plaintiff also cites her answer to an interrogatory in which she stated that O'Brien told her the selected candidate was "more digitally inclined or oriented." ECF No. 45-7 at 32. Third, Plaintiff points to Garcia's "sparse" interview notes stating, inter alia, "social not a priority at NBC." ECF No. 49-4 at 68. Fourth, Plaintiff points to a job description for the Assignment Editor position listing, as "job details," "content generation and management as well as social medial content" and "maintaining a presence on social media, creating unique digital content." ECF No. 49-4 at 61. The job description also lists "checks Twitter, Facebook and other local news sources for story ideas" as a job responsibility. *Id.* Fifth, Plaintiff points to her positive performance evaluations regarding her social media skills. ECF No. 49 at 9-10. In her January 2018 performance evaluation, for example, it was noted that "[y]ou are connected to social media in such an up-to-date manner it never fails to impress. Twitter, Facebook, and PulsePoint are all media you use to full advantage in your job." ECF No. 45-8 at 2. In her May 2019 performance evaluation, its states "per John Chadwick: I would add great social media and internet skills, including Facebook, Twitter, and PulsePoint. Nothing gets by you." ECF No. 45-0 at 4. Finally, Plaintiff points out that "being bilingual was not a job qualification." ECF No. 49 at 18. In reply, KFMB does not meaningfully dispute or even address any of these facts.

Drawing all inferences in Plaintiff's favor, and without making any credibility determinations, Plaintiff has provided undisputed evidence that O'Brien told Plaintiff she was not hired because Garcia was "more digitally oriented," even though Plaintiff had highly positive performance reviews of her social media skills, and it was noted in Garcia's interview notes that "social" was "not a priority" at Garcia's place of employment. When

viewed in the light most favorable to Plaintiff, O'Brien's alleged statement is not only inconsistent with the interview notes and comments in Plaintiff's performance reviews, but is inconsistent with the reasons KFMB states in its motion. The fact that Roberts also allegedly made highly encouraging comments to Plaintiff regarding her standing in the selection process compared to other candidates, and the fact that this was the third time in two years Plaintiff was not selected for a position in favor of a substantially younger person, adds to the reasonableness of a possible inference by a trier of fact that KFMB's proffered reasons for not selecting Plaintiff are pretextual. Accordingly, Plaintiff has met her burden of showing pretext with respect to the 2019 evening Assignment Editor position.[18]

### iv.    2019 Morning Assignment Editor Position

Finally, the parties do not dispute that in July 2019, Plaintiff, who was 63 years old at the time, was not selected for a morning Assignment Editor Position in favor of two other candidates. ECF No. 45-1 at 17-18. KFMB states that even though Plaintiff applied for the position, she was not interviewed "given the proximity to the May 2019 full-time evening Assignment Editor requisition." ECF No. 45-1 at 18. Additionally, KFMB argues that "Escovedo and Richards did not think Plaintiff was a serious candidate for this role because she had just recently told Escovedo that she could not even work the morning desk shift." *Id.* In support, KFMB attaches a 2019 email to Plaintiff from Escovedo telling her she was "down" to work the morning desk shift on July 4th and 5th from 2:00 a.m. to 10:30 a.m., to which Plaintiff responded, "I won't be able to fill the hours of the morning desk shift you've requested due to a conflict with my second job as care giver to my niece. I am

---

[18] In its reply, KFMB includes a list of objections to various portions of Plaintiff's declaration. ECF No. 52 at 13-14. However, KFMB does not otherwise clarify where these portions of Plaintiff's declaration fit into Plaintiff's argument, and it is not apparent from the list. To the extent Plaintiff objects to out of court statements by KFMB employees upon which the Court relies, the objections are **OVERRULED** as party admissions. To the extent the material to which KFMB objects is not referenced or relied on in this Order, the objections are **OVERRULED** as moot.

available weekdays for dayside or nightside shifts as well as the weekend nightside shift."
ECF No. 45-14 at 2. KFMB also cites the deposition testimony of Escovedo, who stated,
"I recall that she said she couldn't – just stated she could not work early morning shifts."
ECF No. 45-4 at 44:11-13. KFMB also cites testimony from Richards that she received
"feedback" that Plaintiff "didn't want to do the morning shift anymore" and "[s]he was
unavailable for that." ECF No. 45-6 at 21:11-14.

KFMB states the position was initially offered to Byran Holt because he had "over
a decade experience in the industry and was working as an Assignment Editor for KFMB's
competitor, NBC," but after he declined, the position was offered to 32-year-old Rachel
Pederson.[19] ECF No. 45-1 at 18. KFMB states that Pederson was selected because she had
an undergraduate degree in broadcast and electronic communication arts from San
Francisco State University. *Id.* KFMB also cites Escovedo's testimony regarding Pederson
that:

> She had experience working at the assignment desk at KGTV, which was also
> one of our competitors, and at her current position was a website builder. And
> she was quite apt at social media skills, posting and that sort of thing. She hit
> a home run on her interview. We walked out of the interview and [Roberts]
> said, 'How can you not hire her? That was great.' And I agreed. And combined
> with her desk experience, we felt she was a good candidate.

*Id.* at 18-19. KFMB also provides a declaration from Escovedo stating:

> Pederson provided great answers to our questions about her technical skills.
> She was also articulate, poised, positive, and, like Garcia, performed well
> under pressure. Based on my observations, as well as Pederson's
> qualifications and experience, I felt she was the best candidate for the role of
> morning Assignment Desk editor and offered her the role after Holt declined.

ECF No. 45-17 ¶ 17.

---

[19] Neither party provides Holt's age.

In opposition, Plaintiff points to evidence showing: (1) Pederson had less than two years of part-time experience in broadcast media, but the job posting stated "minimum two years assignment desk experience preferred;" (2) Pederson had not worked in broadcast media for seven years before the job was posted and was not employed in mid-2019; (3) the "minimal" interviews notes indicated only that Pederson "creates websites for companies;" and (4) Pederson was terminated in September 2019 and the position was not posted again. ECF Nos. 49-4 at 59, 70; 49-1 at 5. Plaintiff argues "[t]he stark disparity between Pederson's qualifications for the Assignment Editor position, less than two years part-time experience, and [Plaintiff's] 30 plus years in the broadcast media business and seven years performing as an Assignment Editor at KFMB at a high level, is striking." ECF No. 49 at 19. In reply, KFMB repeats its argument that Pederson "'hit a home run on her interview,' while [Plaintiff] had just essentially disqualified herself by recently telling Escovedo she could not even work the shift the role was scheduled for, and had performed poorly in another interview just weeks prior." ECF No. 52 at 6.

Plaintiff does not dispute, or even acknowledge, her statements to Escovedo that she could not work early morning hours. Accordingly, Plaintiff has not met her burden of showing that KFMB's overall reason for not selecting her for the 2019 morning Assignment Editor position, i.e. that she was not available to work early morning hour shifts, was pretextual.

### B.    Failure to Prevent Age Discrimination

California Government Code section 12940(k) provides that "[i]t is an unlawful employment practice . . . . [f]or an employer . . . . to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." Courts have interpreted "a failure to prevent discrimination claim [to be] essentially derivative of a [FEHA] discrimination claim." *See Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 804 (N.D. Cal. 2015). To prevail on a claim for failure to prevent discrimination, a plaintiff must show that: (1) she was subjected to discrimination; (2) the defendant failed to take all reasonable steps to prevent discrimination; and (3) this failure caused the plaintiff to suffer

26

injury, damage, loss or harm. *Leiland v. City & Cty. of S.F.*, 576 F. Supp. 2d 1079, 1103 (N.D. Cal. 2008).

KFMB argues it is entitled to summary judgment on Plaintiff's failure to prevent claim because it had anti-discrimination policies that included procedures to handle complaints and investigate discrimination claims. ECF No. 45-1 at 31. KFMB argues "[t]here is no evidence that [Plaintiff] ever complained about age discrimination, so there was simply nothing for KFMB to investigate." *Id.* In support of this argument, KFMB cites *Cal. Fair Empl. & Hous. Comm'n v. Gemini Aluminum Corp.*, 122 Cal. App. 4th 1004, 1024-25 (2004) in which the court found that failing to develop a complaint or grievance procedure relating to discrimination is not taking "all" reasonable steps to prevent discrimination.

Here, KFMB cites no case holding the existence of an anti-discrimination policy containing a complaint and investigation procedure is, per se, sufficient to show that it took "all reasonable steps necessary to prevent discrimination . . . . from occurring." Additionally, some courts have found that if a discrimination claim under FEHA survives, so does a claim for failure to prevent discrimination. *See*, *e.g.*, *Debro v. Contra Costa Cmty. Coll. Dist.*, No. 20-cv-08876-CRB, 2021 WL 5585592, at *3 (N.D. Cal. Nov. 30, 2021); *Dixon v. XPO Logistics, LLC*, No. 3:18-cv-2743-L-MDD, 2020 WL 7024639, at *9 (S.D. Cal. Nov. 30, 2020). However, in its opposition, Plaintiff does not address KFMB's argument with respect to her failure to prevent claim, and Plaintiff makes no attempt at citing countervailing authority. Accordingly, because there is no indication that Plaintiff complained of age discrimination prior to her resignation, summary judgment as to Plaintiff's failure to prevent discrimination claim is **GRANTED**. *See Sanchez v. Loews Hotels Holding Corp.*, No.: 19-cv-02084 W (MDD), 2021 WL 424288, at *7 (S.D. Cal. Feb. 8, 2021) (interpreting failure to prevent claim to require some kind of complaint by the employee).

## C.    Constructive Termination

Constructive discharge occurs when, "looking at the totality of the circumstances, 'a reasonable person in [the employee's] position would have felt that he was forced to quit because of intolerable and discriminatory working conditions.'" *Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir.1987) (quoting *Satterwhite v. Smith*, 744 F.2d 1380, 1381 (9th Cir.1984)). The determination whether conditions were so intolerable and discriminatory as to justify a reasonable employee's decision to resign is normally a factual question left to the trier of fact. *Watson*, 823 F.2d at 361. However, to establish that he was constructively discharged, a plaintiff must at least show some "'aggravating factors,' such as a 'continuous pattern of discriminatory treatment.'" *Id.* (quoting *Satterwhite*, 744 F.2d at 1382).

Plaintiff argues "[t]he evidence of aggravating factors are the unwarranted written warning for alleged excessive absences (that a trier of fact could find was false and contrived) and the reduction of [Plaintiff's] hours." ECF No. 49 at 21. Plaintiff explains:

> On December 17, 2018, after the retirement of Cooper-Chadwick, KFMB planned to promote Escovedo. However, this would leave a full-time Assignment Editor position vacant. Rather than promote one of the two part-time Assignment Editors, [Plaintiff] or Morton, to full-time, KFMB decided to give [Plaintiff] and Morton two weekday shifts in addition to their weekend shifts. The additional shifts resulted in [Plaintiff] working essentially a full-time schedule. So, in September 2019 it was clear she would exceed 1,560 hours for the year (which triggered benefits from KFMB) unless her hours were drastically cut. [Plaintiff's] hours were drastically cut to 20 per week beginning in September 2019 to prevent her from being entitled to benefits, which made it impossible for her to meet expenses. She asked for additional hours, but never got any, so she resigned in January 2020 when she got a full-time job elsewhere.

*Id.* at 20 (internal citations to the record omitted).

Here, there is a dispute, genuine or not, that Plaintiff's written warning for alleged excessive absences was unwarranted, false, or contrived. Plaintiff does not point to any evidence supporting this argument. Moreover, even if it is true, a false written warning regarding absences is not, by itself and as a matter of law, such an intolerable and

discriminatory working condition that it would force a reasonable person to resign.

Additionally, it is not reasonable to infer, as Plaintiff argues, that after her hours were increased to "essentially a full-time schedule," as she admittedly desired, her hours were so "drastically" cut to 20 hours per week so that it made it "impossible for her to meet expenses," and therefore, she was "forced" to quit. The only reasonable inference based on the totality of circumstances is that Plaintiff desired a full-time position, was given additional hours so that she essentially had a full-time position for several months in 2019, and then had her schedule reduced back to 20 hours per week. Plaintiff does not point to any evidence suggesting her previous part-time work schedule was significantly more than 20 hours per week. Furthermore, the cases cited by KFMB are persuasive, and Plaintiff does not attempt to distinguish them or cite countervailing authority. *See King v. AC & R Advert.*, 65 F.3d 764, 768 (9th Cir. 1995) (change to at-will employee status, reduction in managerial responsibilities, and reduction in compensation is not sufficiently intolerable); *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1247 (1994) ("[A] poor performance rating or a demotion, even when accompanied by reduction in pay, does not by itself trigger a constructive discharge."); *see also Gibson v. Aro Corp.*, 32 Cal. App. 4th 1628, 1635 (1995) (finding that under *Turner* "a demotion with a cut in pay does not create the kind of aggravated or intolerable circumstances that would compel a reasonable employee to quit his job"). Accordingly, there is no genuine dispute, and KFMB is entitled to judgment as a matter of law, that Plaintiff was not forced to quit because of intolerable and discriminatory working conditions.

///

///

///

///

///

///

///

## IV.   CONCLUSION

Based on the above, KFMB's Motion for Summary Judgment [ECF No. 45] on Plaintiff's age discrimination claim is **GRANTED** with respect to the 2017 Assignment Editor Position, the 2018 Digital Content Producer position, and the 2019 morning Assignment Editor position, but is **DENIED** with respect to the 2019 evening Assignment Editor position. KFMB's Motion for Summary Judgment with respect to Plaintiff's failure to prevent age discrimination and constructive termination claims is **GRANTED**.

**IT IS SO ORDERED**.

Dated:  March 22, 2022

Honorable Linda Lopez
United States District Judge